
FILED

NOV 2 2 2021

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

**UNITED STATES DISTRICT COURT FOR THE**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**MATHEW RYAN BYRD**

**v.**                                    **Criminal No. 3:19-cr-00080-1**

**UNITED STATES OF AMERICA**

### AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, MATHEW RYAN BYRD ("Byrd"), appearing *pro se*, and timely files his Amended Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside Or Correct Sentence by A Person in Federal Custody, and would show as follows:

### I. JURISDICTION

Byrd is contemporaneously filing a Motion for Leave to File Amended Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") with this Amended Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings and Rule 15 of the Federal Rules of Civil Procedure. See *Liteky v. United States,* 510 U. S. 562 (1994).

1

# I. **STATEMENT OF THE GROUNDS FOR RELIEF**

A.    Whether counsel's failure to communicate with Byrd and properly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial including to inform Byrd of the essential elements of the § 924(c) offense to which he pled guilty deprived Byrd of effective assistance of pretrial counsel and plea context counsel under the Sixth Amendment of the Constitution of the United States and a voluntary, knowing and informed guilty plea.

B.    Whether sentencing counsel's failure to: (1) Review, discuss and explain the PSR to Byrd prior to the sentencing hearing; and (2) File and properly argue at sentencing objections to the PSR deprived him of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

C.    Whether there are facts in dispute between the parties in this case in regards to the Affidavit of Trial Counsel requiring an evidentiary hearing to resolve this dispute and expand an incomplete record.

### III. <u>STATEMENT OF THE CASE</u>

### A.    <u>Procedural Background</u>

On March 19, 2019, a grand jury sitting in the United States District Court for the Southern District of West Virginia, Huntington Division, returned a five (5) count Indictment charging Byrd. See Doc. 20.[1] Counts 1, 2, and 3 charged Byrd with Distribution of Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 4 charged Byrd with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 5 charged Byrd with Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* The Indictment also contained a Criminal Forfeiture pursuant to 21 U.S.C. § 853. *Id.*

On April 23, 2019, Byrd filed a Motion to Enter Guilty Plea Upon Count One [Doc. 34]; and Motion to Continue Trial [Doc. 36]. On June 19, 2019, Byrd filed a Motion to Enter Guilty Plea Upon Count 1 and 5. See Doc. 42. On June 20, 2019, the Court granted Byrd's Motion to Enter Guilty Plea Upon Count 1 and 5 [Doc. 42] and denied his Motion to Enter Guilty Plea Upon Count One [Doc. 34].

On June 26, 2019, Plea Hearing started but was not completed. See Doc. 44.

---

[1]

    "Doc." refers to the Docket Report in the United States District Court for the Southern District of West Virginia, Huntington Division in Criminal No. 3:19-cr-00080-1, which is immediately followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District Court for the Southern District of West Virginia, Huntington Division in Civil No. 3:21-cv-00404, which is immediately followed by the Docket Entry Number.

On July 2, 2019, Byrd filed an Amended Motion to Enter Guilty Plea Upon Count 3 and 5 of the Indictment, which was granted on July 3, 2019. See Docs. 48, 49.

On July 8, 2019, a change of plea hearing was held and Byrd entered a plea of guilty on Counts 3 and 5 of the Indictment. See Doc. 54.

On February 3, 2020, Byrd was sentenced to a term of 106 months' imprisonment, 5 years Supervised Release, no Fine nor Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 73, 74.

On February 7, 2020, Byrd timely filed a Notice of Appeal. Se Doc. 78.

On January 7, 2021, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") issued an Order affirming the judgment of the District Court. See Docs. 122, 123.

**B.**     **Statement of the Relevant Facts**

1.     Offense Conduct

According to the government, on or about January 31, 2019, at or near Saint Albans, Kanawha County, West Virginia, and within the Southern District of West Virginia, Byrd allegedly knowingly and intentionally distributed a quantity of heroin, a Schedule I controlled substance. See Doc. 20 at 3.

On or about February 5, 2019, at or near Barbourville, Cabell County, West

Virginia, Byrd allegedly possessed a Ruger, .380 LCP II, in furtherance of a drug trafficking crime. *Id*. at 5. Facts supporting his arguments will be contained in the arguments.

### 2. Plea Proceeding

On July 8, 2019, a Plea Hearing was held before Judge Robert C. Chambers. See Doc. 50. Byrd entered a plea of guilty as to Counts 3 and 5 of the Indictment. In exchange for Byrd's guilty plea, the government recommended a reduction for acceptance of responsibility and to move to dismiss the remaining counts of the Indictment at sentencing.

### 3. Sentencing Proceeding

On January 23, 2020, Byrd, through counsel, filed a Sentencing Memorandum, asking the Court to sentence Byrd to a term of not greater than 72 months. See Doc. 170.

On February 3, 2020, a Sentencing Hearing was held before Judge Robert C. Chambers. See Doc. 73. At sentencing, the Court denied Byrd's request for a downward variance and sentenced him to a total term of 106 months, 5-years supervised release, and a $200.00 mandatory special assessment fee. See Doc. 74. The Court also adjudged Byrd guilty of Counts 3 and 5 of the Indictment. *Id*. at 6. Counts 1, 2, and 4 of the Indictment were dismissed on the motion of the United

States. *Id.* at 1. A timely Notice of Appeal was filed on February 7, 2020. See Doc. 78.

### 4. Appellate Proceeding

On direct appeal, Byrd argued that his counsel was ineffective in advising him to plead guilty to the firearm count; the district court unreasonably denied his request for a downward variance; and it abused its discretion in denying his motion for a presentence mental evaluation. On January 7, 2021, the Fourth Circuit affirmed the District Court's judgment. See *United States v. Mathew Byrd*, (No. 20-4116) (4th Cir. 2021).

### 5. Postconviction Proceeding

On July 19, 2021, Byrd filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See CvDoc. 146.

On September 8, 2021, Byrd filed a Motion to Expedite Consideration and Motion to Withdraw Magistrate Judge Dwane L. Tinsley. See CvDoc. 151.

On October 21, 2021, the Court issued an Order denying Byrd's Motion to Expedite Consideration and Motion to Withdraw Magistrate Judge Dwane L. Tinsley. See CvDoc. 162.

On October 27, 2021, the Court issued an Order for the government to respond to Bryd's § 2255 Motion by December 3, 2021; is also ordered that Byrd's former attorney, R. Lee Booten, II ("Booten), provide an affidavit responding to Byrd's specific claims of ineffective assistance of counsel by November 12, 2021; and that Byrd's reply to the government's response and Booten's Affidavit is due by January 3, 2022.

## IV. **COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255**

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 185 L. Ed. 2d 1019, 81 USLW 4327 (2013). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief."*Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379 (4ᵗʰ Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73.

"Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the

effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

To establish the advice-of-counsel defense, a "defendant must show the (a) full disclosure of all pertinent facts to [counsel], and (b) good faith reliance on [counsel's] advice." *United States v. Butler*, 211 F.3d 826, 833 (4th Cir. 2000).

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *James v. Harrison*, 389 F.3d 450 (4th Cir. 2004) .

A defendant is also entitled to effective assistance of counsel on direct appeal. See *Evitts v. Lucey*, 469 U.S. 387, 397 (1985) (recognizing right to effective assistance of counsel on appeal). "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, [a petitioner] must normally demonstrate" both deficient performance, meaning "that his 'counsel's representation fell below an objective standard of reasonableness' in light of the prevailing professional norms," and prejudice, meaning "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Allmendinger*, 894 F.3d 121 (4th Cir. 2018)

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

## V. <u>DISCUSSION</u>

As a preliminary matter, Byrd respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *United States v. Wilson*, 699 F.3d 789 (4th Cir. 2012) (*Pro se* pleadings are to be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

A. <u>Counsel's failure to communicate with Byrd and properly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial including to inform Byrd of the essential elements of the § 924(c) offense to which he pled guilty deprived Byrd of effective assistance of pretrial counsel and plea context counsel under the Sixth Amendment of the Constitution of the United States and a voluntary, knowing and informed guilty plea.</u>

Chapter 1, Rule 1.4: Communication of the West Virginia Rules of Professional Conduct states that:

(a)   A lawyer shall:

(1)   promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2)      reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3)      keep the client reasonably informed about the status of the matter;

(4)      promptly comply with reasonable requests for information; and

(5)      consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)      A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, there was not any reasonable communication from the beginning of his case between Byrd and his attorney, R. Lee Booten II ("Booten"), so that he could effectively participate in his defense. He certainly did not meet the standard as set forth above in Rule 1.4 of the West Virginia Rules of Professional Conduct or any other professional norm for that matter. He failed to reasonably visit or consult with Byrd about the means to be used to accomplish his objectives other than advise him to plead guilty while he repeatedly maintained his innocence. Further, there was not

any regular communication between Booten and Byrd regarding his case.

In this case, the only legal advice Booten gave to Byrd was that he had to plead guilty or he would have to proceed to trial where he would be facing a much harsher sentence. Because he had a good faith reliance on Booten's legal advise, he ultimately did plead guilty to Counts 3 and 5 of the Indictment. However, he failed to advise Byrd of the essential elements of § 924(c) offense in Count 5, which carried a consecutive sentence. By not advising him of the essential elements of the proof necessary to convict him on Count 5, Byrd was led by the Court at the Rule 11 plea hearing in the plea colloquy to admit his guilt.

Specifically, Byrd now contends that the evidence was insufficient to support his conviction for possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Had he known the essential elements necessary to convict him on Count 5, he certainly would not have answered the inquiries of the Court in the affirmative.

18 U.S.C. § 924(c)(1)(A) currently provides in relevant part that:

> "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime — (i) be sentenced to a term of imprisonment of not less than 5 years[.]"

18 U.S.C. § 924(c)(1)(A).

Booten's lack of proper advice regarding the above elements caused Byrd to enter into the change of plea hearing without the knowledge he needed to make an informed decision on whether to plead guilty to Count 5 or proceed to trial. With Booten repeatedly telling him that he had to plead guilty and without the proper advise and information he needed to before he pled guilty, Byrd acquiesced to Booten's instructions to just go along with the Court's colloquy and answer the Court's inquiry affirmatively. Byrd wholly relied and had a good faith reliance on Booten's advice.

The provision of § 924(c) criminalizing the "possession" of a firearm "in furtherance of" of a drug trafficking crime was added by Congress in 1998 in the wake of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). *Bailey* dealt with a prior version of the statute that did not mention possession, and instead prohibited only using or carrying a firearm "during and in relation to" a crime of violence or drug trafficking. See *Bailey*, 516 U.S. at 138. The *Bailey* Court rejected a broad interpretation of "use," holding that it required "evidence sufficient to show an active employment of the firearm by the defendant." *Id.* at 143, 116 S.Ct. 501. The Court stressed that Congress' choice of the word "use" implied that the mere possession of a firearm was insufficient to sustain a conviction under § 924(c). *Id.* at

143, 148, 150. And the Court noted that if "Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided." *Id.* at 143.

In response to *Bailey*, Congress amended § 924(c) to indicate just such an intention. By adding the "possession in furtherance of" language, Congress meant to broaden the reach of the statute beyond the Supreme Court's narrow construction. See *Lomax*, 293 F.3d at 704. Indeed, "[t]he legislative history indicates that the amended version of the statute added the phrase criminalizing possession 'in furtherance of' a drug trafficking crime in order to 'reverse the restrictive effect of the *Bailey* decision.'"

In determining what evidence is sufficient to establish a violation of § 924(c), the statutory term "furtherance" should be given its plain meaning. According to the dictionary, "furtherance" means "[t]he act of furthering, advancing, or helping forward." *Webster's II New College Dictionary* 454 (1999). Therefore, § 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question. See *United States v. Myers*, 280 F.3d 407, 415 (4th Cir.2002).

There are many factors that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug

trafficking activity. Some of these factors may include, but are not limited to: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir.2000); *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir.2002).

In this case, at the change of plea hearing held on July 8, 2019, the following colloquy took place:

THE COURT:    All right. Now let's turn to Count Five. There you're charged with violating Section 924. That law says: Any person who, during and in relation to any crime of violence or drug trafficking crime for which the person may be prosecuted in a court of the United States, uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm shall be guilty of another crime against the United States.

As to Count Five, the government would have to prove beyond a reasonable doubt these elements: First, that you committed a drug trafficking crime for which you may be prosecuted in a court of the United States, such as the one you just admitted in Count Three; and, second, during and in relation to the commission of that crime, you knowingly used or carried a firearm or, in furtherance of such crime, possessed a firearm.

Possession with intent to distribute heroin is a drug trafficking offense. The phrase "uses a firearm" means the active employment of a firearm. To carry a firearm means the knowing possession and bearing, movement,

|                 |                                                          |
|-----------------|----------------------------------------------------------|
|                 | conveyance or transportation of a firearm.               |
|                 | So considering this explanation, do you believe you're guilty of Count Five? |
| THE DEFENDANT:  | Yes, Your Honor.                                         |
| THE COURT:      | Tell me what you did that makes you guilty of this.      |
| THE DEFENDANT:  | On February the 5th, the police came to my house, and I had drugs in one room and a gun in another room. And that's basically it. |
| THE COURT:      | All right. Were you in possession of drugs that you intended to sell or distribute? |
| THE DEFENDANT:  | Yes.                                                     |
| THE COURT:      | *All right. Is one of the reasons you had a firearm the fact that you had illegal drugs that you would want to protect?* |
| THE DEFENDANT:  | Yes.                                                     |
| THE COURT:      | *So you possessed this firearm at least partly because you knew you were storing drugs in this residence, and that you might need protection of either you or the drugs?* |
| THE DEFENDANT:  | Yes.                                                     |
| THE COURT:      | And all of that happened on or about February 5th, 2019? |
| THE DEFENDANT:  | Yes, Your Honor.                                         |
| THE COURT:      | All right. You can sit down for a few minutes.           |

See Doc. 87 at pp. 8-10. (Emphasis added).

It is clear and obvious that Byrd was led by the Court regarding the reason he had the firearm. Had Booten advised and informed Byrd of the essential elements of the offense and not been instructed by his attorney to just answer in the affirmative to the Court's inquiry, there is a reasonable probability that he would not have pled guilty to Count 5 of the Indictment and would have proceeded to trial. This lack of

information and correct advice was clear deficient performance by Booten under any prevailing norm. Byrd was actually prejudiced because of the lack of information from his attorney and understanding of the proof necessary for the government to find him guilty beyond a reasonable doubt. Further, Count 5 netted Byrd a five (5) year consecutive sentence (prejudice).

Booten's deficient performance was validated at the Sentencing Hearing held on February 3, 2020.

MR. BOOTEN: Yes, Your Honor.

As the presentence report points out, Mr. Byrd has a serious past drug addiction that led him into this. Prior to that, he was a good student, participated in sports, didn't have any juvenile history. And then after his automobile accident and being prescribed medications, he developed his drug habit which then led into, ah, his dealing drugs to partially support that habit.

I understand, Your Honor, that we have a 924(c) in this matter, but there was no evidence that the gun -- that he ever carried the gun during any drug transactions.

Your Honor, so we're asking the Court to take his mental health situation, his drug addiction, his criminal history variance, and the fact that this firearm was never carried or used during a transaction, even though he admitted to using it in furtherance -- it was in a dresser drawer, Your Honor, where it was found -- we're asking the Court to fashion an individualized sentence of 72 months in this matter.

See Doc. 88 at pp. 8-9.

It is clear and obvious from Booten's above statement that he did not believe

that Byrd was guilty of Count 5.

Later at the Sentencing Hearing, Byrd makes his statement regarding this case

as follows:

> THE DEFENDANT: Your Honor, I want to apologize to the Court and to my fiancee Ashley, my mom, my stepfather and my Aunt Kay. I want to apologize to the Court and Stephanie Taylor.
>
> And basically I really, umm, gave Mr. Booten every opportunity to, you know, speak for me, but had I known what I know now, I probably wouldn't have kept him as my attorney. I fought with him this entire case. Poor, you know, communication with Stephanie Taylor. I don't blame anybody but myself for that.
>
> I -- you know, when I took this plea, you know, a month later he was in rehabilitation for a month or two, however long it was. You know, all the research I've done, it's not really a 924(c). I'm not denying my conduct in any sort of way, but I really feel had I known what I know now, I would, you know, really change -- change things.
>
> But I can't go back, and I just want to apologize once again. And, you know, I hope you take into consideration that -- you know, all the factors in my case. And God bless you.

See Doc. 88 at pp. 9-10.

Therefore, Byrd's guilty plea was invalid because it was not voluntary,

knowing and informed as to Count 5. Accordingly, his conviction on Count 5 should be vacated for resentencing.

**B.** **Sentencing counsel's failure to: (1) Review, discuss and explain the PSR to Byrd prior to the sentencing hearing; and (2) File and properly argue at sentencing objections to the PSR deprived him of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence**.

Prior to sentencing, the PSR was released by the Probation Office. Booten did not properly review, discuss or explain the PSR adequately with Byrd prior to sentencing.

At the Sentencing Hearing held on February 3, 2020, the Court inquired of Byrd:

| | |
|---|---|
| THE COURT: | All right. Since the time of the defendant's plea, the probation office has prepared a written presentence report. Mr. Booten, have you read the report? |
| MR. BOOTEN: | Yes, Your Honor. |
| THE COURT: | Is there any reason why sentencing should not take place today? |
| MR. BOOTEN: | No, Your Honor. |
| THE COURT: | Mr. Byrd, have you read the report and gone over it with your lawyer? |
| THE DEFENDANT: Briefly, yes. | |
| THE COURT: | Well, briefly. Do you believe you have had adequate time to discuss it with him? |
| THE DEFENDANT: Yes. | |

See Doc. 88 at pp. 3-4.

Byrd's answers show that he had not had enough time to read the PSR and

understand it with his attorney. The Court failed to ask Byrd if he needed more time to review it before sentencing went forward. As such, he was not prepared to go forward with sentencing.

Further, Booten failed to file any objections to the PSR. The reason he did not file objections is contained in the February 4, 2020 email (attached hereto) which Booten sent to Brenda Walker, Byrd's mother, wherein he states:

> "Dear Brenda: This email will confirm my representations made on 2/3/2020 that I spent a period of time in rehab during the summer of 2019 and that it eventually adversely my representation of Matt in his sentencing process . . ."

See **Exhibit-1.**

Booten should have filed objections to: (1) Count 5 being voluntary, knowing and informed; (2) his Criminal History Category; (3) the denial of his Motion for Mental Health Evaluation; and (4) the § 3553(a) sentencing factors. Booten's failure to file these objections meant that these issues were not preserved for appellate review.

As such, Booten's failure to file objections to the PSR was deficient performance. Byrd was actually prejudiced because these issues could only be reviewed under the Plain Error standard of review.

Accordingly, sentencing counsel's performance was deficient and that

deficiency prejudiced Byrd.

On appeal, appellate counsel Patrick Mullin ("Mullin"), raised the above issues, but couched these issues under ineffective assistance of counsel because they were not preserved by Booten in the District Court.

Of course, the Fourth Circuit would not consider a claim of ineffective assistance on direct appeal unless the record conclusively showed that counsel was ineffective. Because the Court found that the record in this case did not conclusively show ineffective assistance, it declined to consider this claim.

Accordingly, Booten and Mullin's deficient performances denied Byrd of a fair and meaningful appellate review.

C.    **There are facts in dispute between the parties in this case in regards to the Affidavit of Trial Counsel requiring an evidentiary hearing to resolve this dispute and expand an incomplete record.**

As ordered by the Court, on November 11, 2021, attorney R. Lee Booten II, filed his Affidavit of Trial Counsel. See Doc. 167. Because there are a plethora of facts in dispute between Booten and Byrd, an evidentiary hearing should be held to resolve these facts and to expand an incomplete record. Byrd respectfully requests that counsel be appointed to represent him at the evidentiary hearing.

In his Affidavit, Booten first correctly states that he was trial counsel for Byrd. See Doc. 167 at p. 1. He next inaccurately claims that Byrd's § 2255 Motion was not

filed timely. Certainly, a competent attorney should know that Byrd had one year from the denial of his Petition for a Writ of Certiorari in the Supreme Court, which was denied on April 19, 2021. As such, Byrd's motion is timely.

Booten next quibbles that on the form § 2255 Motion, he answered Question 12 No, but answered Question 9 stating ineffective assistance of counsel was raised. *Id.* In truth and fact, it was raised but the Fourth Circuit declined to review such a claim on direct appeal. Technically, it was raised, but not reviewed or ruled on by the Court. It is hard to imagine that Booten would grasp at straws like this to allegedly show that Byrd misrepresents the facts.

Booten next claims that he did not file a Motion to Suppress because he could not find any good faith grounds to do so. *Id.* at 2. Byrd has stated good faith grounds for filing a motion to suppress in his initial memorandum of law and will not rehash those reasons here. Because of the lack of communication between the parties, Booten would not listen to his reasons for filing same.

Next, Booten claims he did not file a motion for mental examination because he did not believe that Byrd was incompetent. *Id.* at 2. Byrd responds that he did not know that Booten had professional credentials to make that determination. Booten certainly knew about Byrd's addiction problem. It would seem that he would be empathetic with his own substance problems. He should understand that these

24

conditions are not always apparent to a lay person unless they are examined by a mental health professional.

Booten accurately states that Byrd always claimed his innocence of the 924(c) charge. He wanted to proceed to trial, but Booten talked him out of it claiming that the evidence was overwhelming in the government's favor. In response, Byrd states that his argument concerning the 924(c) allegation supports his reason for wanting to proceed to trial on Count 5. In essence, by pleading guilty to an offense he always felt he was innocent of, he netted himself an additional five (5) years of imprisonment. Byrd also believes that because of Booten's substance problem that he was in no shape to take his case to trial. As such, he pushed Byrd into the guilty plea.

Next, Booten gives a laundry list of what he claims are misrepresentations made by Byrd in his memorandum of law as follows:

1. Booten claims that he stated that Byrd had no meritorious defenses at the plea hearing because that was his "well-reasoned" opinion. In response, at this point in the proceedings, it is not known how much Booten's substance problem was affecting his performance. See Exhibit 1. He admitted that he dropped the ball at sentencing to Brenda Walker. Further, Byrd states that there were meritorious defenses as he has argued in his memorandums.

2. Booten next that he did not fight with Byrd, but blames Byrd's mother for affecting his representation. *Id.* at 2-3. He claims that she was overbearing, calling him insentiently many times a day. Any competent attorney should know how to handle his clients and his loved ones. It should not affect his representation. If it reaches the point where it is affecting his representation, he needs to withdraw as counsel.

3. Booten contends that Byrd's plea was voluntary. He then goes through the calculations that he allegedly discussed with Byrd. *Id.* at 3-4. He also states that Byrd pled guilty without a plea agreement because he wanted to make it appear that he was not cooperating with the government. Then, he states that Byrd was cooperating with the government. *Id.* at 4.

In reply, Byrd always maintained his innocence on the 924(c) charge. He still maintains that his guilty plea on Count 5 was involuntary. He did not want to plead guilty to it, but Booten pushed him and basically coerced him into pleading guilty. He now contends that because Booten was having his own problems with substance abuse that he was unprepared to proceed to trial in this case. The real reason that he pled guilty without a plea agreement was because the government was not offering any benefit for doing so and because he did not want to waive his right to appeal. It also comes as a most serious moment that Booten would disclose in his Affidavit

26

which is not sealed that Byrd was allegedly cooperating with the government. This is a breach of attorney/client privilege and shows his incompetence. Booten should have filed his Affidavit under seal because this could cause Byrd danger to himself and family.

4. Booten states that Byrd believed that there was no evidence to support Count 5, but that he contended that Byrd would be convicted on that charge. *Id.* at 4. This point has been answered in the memorandums filed by Byrd and should be decided at an evidentiary hearing.

5. Booten claims that Byrd maintained that the search warrant was invalid, but that he believed that there was no meritorious argument to file a motion to suppress. *Id.* Again, this claim has been answered in Byrd's memorandum and should be decided at an evidentiary hearing.

6. Booten disputes Byrd's claim that he was incompetent. However, his acts and omissions in the case are clear and obvious. The fact that he had to go to rehab for substance abuse, but did not disclose his problem to the Court or his client would support incompetence in itself. See Exhibit 1. Booten had a duty to inform the Court and Byrd about his problem wherein the Court could have appointed new counsel. Instead, he did not disclose his problem until after the Sentencing Hearing and his representation of Byrd was completed. This is another prime example of deficient

performance. Booten failed to consult with the Court or Byrd about any relevant limitation on his conduct.

7.    Booten claims that he did not observe anything that would serve as a basis to file a motion for mental evaluation, but because of the pressure and threats from Byrd's mother, he did file the motion. *Id.* at 5. In truth and fact, Booten finally filed the motion for mental examination before the Sentencing Hearing. Byrd wanted him to file the motion prior to the change of plea hearing to determine whether he was competent to proceed to trial if he decided to do so.

Booten next goes off on a tangent claiming that he "vigorously" represented Byrd and he was not ineffective in Byrd's case. He blames Byrd's mother for "poisoning" the relationship between him and his client. He also makes mention of the forfeiture that the government attempted on Mark Walker's Escalade. He states that because he did not represent Walker, that he did not file a claim on his behalf, but that the government ultimately returned the vehicle to Walker. However, in truth and fact, Byrd's appellate attorney Mullin was the one who helped Walker have the vehicle returned to him.

Lastly, Booten claims that he has no ill will toward Byrd and hopes that he gains relief from his motion for compassionate release. He further blames alleged "jailhouse" lawyers to giving Byrd flawed advice and for the drafting of his

memorandum of law. *Id.* at 6.

In reply, Byrd contends that Booten was ineffective in his representation in this case for all of the reasons contained in his memorandums of law. It is unknown how much Booten's substance abuse problem affected his representation. He failed to inform the Court and his client about his problem, which can only be deemed deficient performance.

Lastly, Byrd's mother, Brenda Walker, has prepared a notarized response to Booten's Affidavit, which is attached as **Exhibit 2**. It is her belief that since Booten has attacked her several times in his Affidavit that she needed to respond..

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Byrd's conviction on Count 5 should be vacated for resentencing. In the alternative, an evidentiary is necessary so that Byrd may further prove his meritorious grounds for relief, resolve the many disputed facts between the parties, and expand an incomplete record.

Respectfully submitted,

Dated: November 19, 2021

MATHEW RYAN BYRD
REG. NO. 70281-061
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O. BOX 1009
WELCH, WV 24801

29

MATHEW RYAN BYRD
REG. NO. 70281-061
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O. BOX 1009
WELCH, WV 24801
November 19, 2021

Mr. Rory L. Perry II
Clerk of Court
U.S. District Court
Southern District of West Virginia
Huntington Division
845 Fifth Avenue
Huntington, WV 25701-2014

      RE:   *Byrd v. United States*
            Civil No. 3:21-cv-00404
            Crim No. 3:19-cr-00080-1

Dear Ms. Connor:

    Enclosed please find and accept for filing Movant's Amended Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside Or Correct Sentence by A Person in Federal Custody Please submit this memorandum of law to the Court.

    Thank you for your assistance in this matter.

                    Sincerely,

                    MATHEW RYAN BYRD
                    Appearing *Pro Se*

*Encl. as noted*

 

U.S. POSTAGE PAID
PM 2-DAY
HOUSTON, TX
77070
NOV 18 21
AMOUNT
$8.70
1006    25701    R2303S101806-03

 

# UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

**FROM:**

- ■ Expected delivery date specified for domestic use.
- ■ Most domestic shipments include up to $50 of insurance (restrictions apply).*
- ■ USPS Tracking® included for domestic and many international destinations.
- ■ Limited international insurance.**
- ■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

MATHEW RYAN BYRD
Reg. No. 70281-061
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O. BOX 1009
WELCH, WV  24801

**TO:**
Mr. Rory L. Perry II
Clerk of Court
U.S. District Court
Southern District of West Virginia
Huntington Division
845 Fifth Avenue
Huntington, WV 25701-2014

## TRACKED ■ INSUR



PS00001000014

EP14
OD: 1



EXPECTED DELIVERY DAY: 11/22/21

USPS TRACKING® #



9505 5104 4803 1322 4124 27

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.