## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

MATHEW BYRD,

        Movant,

v.                                   Case No. 3:21-cv-00404
                                        Case No. 3:19-cr-00080-1

UNITED STATES OF AMERICA,

        Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.  (ECF No. 146).  This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### I.     *RELEVANT PROCEDURAL HISTORY*[1]

Through three controlled buys that occurred at a residence in St. Albans, West Virginia on January 25, January 27, and January 31, 2019, Mathew Byrd (hereinafter "Defendant") sold a total of 20 grams of heroin to a confidential informant ("CI").  On February 5, 2019, officers executed a search warrant on Defendant's residence in Barboursville, West Virginia where they located and recovered 254 grams of heroin, $10,009 in United States currency, digital scales, and a money counter.  A Ruger .380

---

[1] The undersigned's citations to the district court record herein will refer to the docket entries as "ECF No. ____" and will use the pagination appearing at the top of the ECF document (which may differ from the page numbers appearing within the document itself, such as transcript pagination).

LCP II handgun was found in a bedroom dresser top left drawer in close proximity to the drugs and money.  (ECF No. 3, Attach. 1).

On February 15, 2019, the United States of America ("the government") filed a criminal complaint charging Defendant with a violation of 21 U.S.C. § 841(a)(1).  (ECF No. 3).   Then, on March 19, 2019, Defendant was charged by a federal grand jury in a five-count indictment with three counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Counts One, Two, and Three), one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count Four), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Five).  (ECF No. 20).   Throughout the relevant district court proceedings Defendant was represented by retained counsel, R. Lee Booten, II ("Booten").   At some point during his representation of Defendant, Booten received rehabilitative treatment for substance abuse.

>A.   *Defendant's guilty plea proceedings.*

On July 8, 2019, Defendant pled guilty, without a plea agreement, to Counts Three and Five of the indictment.  (ECF Nos. 53).   The district court conducted a thorough plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure, including receiving Defendant's own factual basis for his guilty pleas to both Counts Three and Five, the government's proffer of evidence to support the essential elements of the crimes set forth in the indictment (which included the testimony of one of the investigating officers), and Defendant's acknowledgement of the rights he was waiving and his satisfaction with his attorney's representation.  (ECF No. 87, Plea Hrg. Tr., *passim*).

Of note, after Defendant was sworn, and after finding that he was competent to enter an informed plea, the Court asked Defendant, "[h]ave you had enough time to

discuss your case with your lawyer?" (*Id.* at 2).  Defendant replied, "[y]es, Your Honor." (*Id.*)  When asked by the Court, "[h]as he been able to answer your questions about what you should do?" Defendant again replied, "[y]es, Your Honor."  (*Id.* at 2-3).  The Court then asked, "[a]re you completely satisfied with the legal advice he's given you?" (*Id.* at 3).  Defendant once again replied, "[y]es, Your Honor." (*Id.*)  The Court then discussed each of the counts on which Defendant had indicated his intent to plead guilty and the fact that he was doing so without a plea agreement.  (*Id.* at 3-12).

With respect to the firearm offense contained in Count Five, the following exchange occurred:

> THE COURT: All right. Now let's turn to Count Five. There you're charged with violating Section 924. That law says: Any person who, during and in relation to any crime of violence or drug trafficking crime for which the person may be prosecuted in a court of the United States, uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm shall be guilty of another crime against the United States.
>
> As to Count Five, the government would have to prove beyond a reasonable doubt these elements: First, that you committed a drug trafficking crime for which you may be prosecuted in a court of the United States, such as the one you just admitted in Count Three; and, second, during and in relation to the commission of that crime, you knowingly used or carried a firearm or, in furtherance of such crime, possessed a firearm.. . . .
>
> THE COURT: So considering this explanation, do you believe you're guilty of Count Five?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Tell me what you did that makes you guilty of this.
>
> DEFENDANT: On February the 5th, the police came to my house, and I had drugs in one room and a gun in another room. And that's basically it.
>
> THE COURT: All right. Were you in possession of drugs that you intended to sell or distribute?
>
> DEFENDANT: Yes.

THE COURT: So you possessed this firearm at least partly because you knew you were storing drugs in this residence, and that you might need protection of either you or the drugs?

DEFENDANT: Yes.

(ECF No. 87 at 10-12).

The government also offered the testimony of West Virginia State Police Sergeant L.J. Deskins ("Deskins"), who was present during the search of Defendant's Barboursville residence. Deskins testified that, when the warrant was executed, Defendant and his significant other were found in a downstairs bedroom. (ECF No. 87 at 14). The subject .380 Ruger firearm was located in a dresser in the bedroom and $1,304 in U.S. currency bound in rubber bands was sitting on top of the dresser. (*Id.* at 14-15). In a closet adjacent to the bedroom, officers found 254 grams of tar heroin and an additional $9,000 in cash, including $365 that had previously been recorded and utilized in the controlled purchases by the CI working with law enforcement in this case. (*Id.* at 15). In the kitchen, officers also found a money counter and digital scales, items that are indicative of drug trafficking. (*Id.*) Deskins further confirmed that, although he was not directly involved in the controlled buys, he had reviewed audio and visual evidence of the controlled buy from Defendant on January 31, 2019. (*Id.* at 17). Deskins stated that there was no indication that Defendant carried the firearm with him during the drug transactions. (*Id.* at 17-18). However, during this exchange, Booten confirmed that Defendant had told him, as he had told the court, that he had the gun there for protection. (*Id.* at 17).

   B.   *Defendant's sentencing proceedings.*

On January 23, 2020, Defendant, by counsel, filed a thorough sentencing memorandum addressing Defendant's mental health history and emphasizing his lack of criminal history and the fact that Defendant did not use or carry the firearm during the

subject drug transactions.  (ECF No. 69).  On January 24, 2020, Defendant, by counsel, also filed a motion for a presentence mental evaluation and motion to continue the sentencing hearing.  (ECF Nos. 70 and 71).

Defendant appeared for sentencing on February 3, 2020.  (ECF No. 88).  The Court began by addressing Defendant's motion for a presentence mental evaluation.  (*Id.* at 1-3).  Booten stated the basis for the motion was Defendant's "history of mental issues" and that such evaluation would aid the court in fashioning an appropriate individualized sentence and clarified that he was not claiming incompetency.  (*Id.*)  The Court denied the motion stating that, while Defendant had a long history of substance abuse, some learning disabilities, anxiety, and depression, those were not compelling reasons to delay sentencing for a mental evaluation.  (*Id.* at 3-4).  Nothing in the motion implicated Defendant's competency to enter a guilty plea or to proceed to trial.  Thus, the Court found that it would be counterproductive to continue the sentencing hearing when the Bureau of Prisons could conduct a mental evaluation and address appropriate mental health treatment concerns.  (*Id.*)

The parties made no objections to the Presentence Investigation Report ("PSR"). (*Id.*)  In accordance with section 2K2.4(b) of the United States Sentencing Guidelines ("U.S.S.G."), the firearms offense in Count Five had a statutorily required consecutive five-year (60-month) sentence.  (ECF No. 77 at 8, ¶ 31).  Based on the quantity of drugs and currency, in accordance with U.S.S.G. § 2D1.1(c)(8), the recommended base offense level under the guidelines for the drug offense in Count Three was 24.  (ECF No. 77 at 7-8, ¶¶ 20-26).  Due to his guilty plea, Defendant received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21.  (*Id.*, ¶¶ 28-29).  He was assessed four criminal history points under U.S.S.G. § 4A1.1, resulting in a Criminal

History Category of III. (*Id.* at 8-9, ¶¶ 32-38). Thus, the PSR ultimately recommended a guideline range of 46-57 months of imprisonment for Count Three. (*Id.* at 15, ¶ 68). After Defendant acknowledged that he had sufficient time to discuss the PSR with Booten and understood it, the Court adopted the recommended offense level and other guideline calculations for the drug offense and Defendant moved for a downward variance from the guideline range. (ECF No. 88 at 5-8).

Booten argued for a total sentence of 72 months, consisting of 12 months for the drug conviction and the consecutive 60 months for the firearm conviction. (*Id.* at 8-10). This request for a downward variance was based on Defendant having a 10-year-old domestic battery conviction (claiming that his criminal history was overrepresented), being a drug addict, and the fact that the firearm was not carried by him during the drug transactions. (*Id.*)

When asked to give his allocution, Defendant addressed the court as follows:

> DEFENDANT: And basically I really, umm, gave Mr. Booten every opportunity to, you know, speak for me, but had I known what I know now, I probably wouldn't have kept him as my attorney. I fought with him this entire case. Poor, you know, communication with Stephanie Taylor. I don't blame anybody but myself for that. I - you know, when I took this plea, you know, a month later he was in rehabilitation for a month or two, however long it was. You know, all the research I've done, it's not really a 924(c). I'm not denying my conduct in any sort of way, but I really feel had I known what I know now, I would, you know, really change - change things. . . .

(*Id.* at 10-11).

The Court noted that, if Defendant was dissatisfied with Booten's assistance, he had ample time to address that issue with the court and seek new counsel but failed to do so. (*Id.* at 11). With respect to the firearms offense, the Court advised Plaintiff as follows:

> As far as the gun, federal law makes clear that the presence, the mere presence of a firearm around drugs and the indicia of drug dealing is enough for a court to find, as you have admitted, that the person used the firearm

6

> in the commission of the offense.  Undoubtedly when people have a large
> amount of drugs, conduct drug transactions, keep a large amount of cash,
> they feel the need to have the protection of a firearm.  That is evident here
> as well.

(*Id.* at 13-14).  The Court ultimately denied Defendant's motion for a downward variance and sentenced him to a 46-month term of imprisonment (falling at the very bottom of the guideline range) for the drug conviction, and a consecutive 60-month sentence for the firearm offense, for a total term of imprisonment of 106 months.  (*Id.* at 14-15).  In denying the motion for a downward variance, the Court noted Defendant's prior federal conviction for drug distribution (also making him a felon in possession of a firearm) and stated, "when you chose to engage in this type of serious drug dealing with a felony conviction already under your belt, you should have realized that you were digging yourself in a very deep hole.  So I'm not inclined to vary below the guideline range." (*Id.* at 14).

C.     *Defendant's direct appeal.*

On February 7, 2020, Defendant filed a timely notice of appeal.  (ECF No. 78).  On appeal, represented by newly retained counsel, Patrick A. Mullin ("Mullin"), Defendant argued that Booten was ineffective in advising him to plead guilty to the firearm count; that the district court unreasonably denied his request for a downward variance; and that the district court abused its discretion in denying his motion for a presentence mental evaluation.  On January 7, 2021, the United States Court of Appeals for the Fourth Circuit denied the appeal in an unpublished per curiam opinion.  *United States v. Byrd*, No. 20-4116, 848 F. App'x 762 (4th Cir. Jan. 7, 2021).  The Court found that Defendant's sentence was procedurally and substantively reasonable; that the district court did not abuse its discretion in denying Defendant's motion for presentence mental evaluation; and that the record did not conclusively show that counsel was ineffective, leaving that matter to be

addressed in post-conviction habeas corpus proceedings. *Id.* Defendant's petitions for rehearing and rehearing en banc were subsequently denied. *United States v. Byrd*, No. 20-4116, Doc. 35. On April 19, 2021, the United States Supreme Court denied Defendant's petition for a writ of certiorari, rendering his judgment final. *Byrd v. United States*, No. 20-7524, 141 S. Ct. 2549 (U.S., Apr. 19, 2021).

D.   *The instant § 2255 motion and related briefing.*

On July 19, 2021, Defendant filed the instant § 2255 motion raising various claims of ineffective assistance of counsel. (ECF No. 146). Defendant argues that Booten should have filed a motion to suppress evidence seized pursuant to the search warrant for the Barboursville residence; that Booten erred in failing to request a mental evaluation before Defendant pled guilty; and that Booten should have challenged the factual basis for the § 924(c) conviction. (*Id.* at 4).

Defendant also claims the district court abused its discretion by accepting Defendant's guilty plea to the § 924(c) charge in Count Five because the government did not prove "active employment" of the firearm and because Defendant did not understand the elements of that offense. (*Id.* at 7). Defendant's motion further asserts that Mullin provided ineffective assistance of counsel because he failed to raise these substantive issues on appeal. (*Id.* at 5).

On November 11, 2021, as ordered by the Court, Booten filed an affidavit addressing Defendant's various claims of ineffective assistance of counsel. (ECF No. 167). The material portions of the affidavit will be further addressed *infra*.

On November 22, 2021, Defendant filed an amended memorandum in support of his § 2255 motion. (ECF No. 172). The amended memorandum elaborates on Defendant's claim that Booten provided ineffective assistance of counsel prior to his guilty

8

plea by failing to properly communicate with him and inform him of the essential elements of a § 924(c) offense and the consequences of his guilty plea. (*Id.* at 2, 14-20). Additionally, the amended memorandum asserts that Booten failed to review and explain his PSR to him and failed to object to the PSR at sentencing. (*Id.* at 2, 20-23). Defendant seeks an evidentiary hearing to resolve alleged disputed facts concerning these issues. (*Id.* at 2, 23-29).

On December 3, 2021, the government filed a response to Defendant's § 2255 motion asserting that Defendant's sworn statements during his guilty plea hearing and other evidence of record fail to establish that his guilty plea was not knowing and voluntary, that he received ineffective assistance of counsel during the plea or sentencing stages, or that the district court abused its discretion in sentencing. (ECF No. 177).

On December 20, 2021, Defendant filed a reply brief. (ECF No. 181). Defendant again claims that Booten did not properly consult with him and advise him about the elements of a § 924(c) offense, causing him to plead guilty without a full understanding of the consequences thereof, including the fact that he was pleading guilty to a charge that required a consecutive sentence with a mandatory minimum. (*Id.* at 2-3). He further claims that Booten told him to just "agree with the judge" to avoid going to trial and that he was "led by the Court at the Rule 11 plea hearing in the plea colloquy to admit his guilt." (*Id.* at 3-4). Defendant further suggests that he is "actually innocent" of a § 924(c) offense because he did not use, carry, or brandish (that is "actively employ") the firearm during a drug transaction. (*Id.* at 6). Defendant also claims that Booten failed to file a motion to suppress the evidence seized pursuant to the search warrant despite his request to do so and makes a blanket statement that the search warrant was invalid. (*Id.* at 4-5). Defendant again asserts an evidentiary hearing is necessary. (*Id.* at 2, 7).

9

Defendant suggests disbelief that Booten ever examined the search warrant because he "was in the process of going into rehab." (*Id.* at 5). However, Booten's affidavit asserts that he did review the search warrant and did not believe there was any valid basis to challenge it. (ECF No. 167 at 2). Defendant's reply also asserts that the evidence was insufficient to support his § 924(c) conviction and that, at best, would support a two-level enhancement under U.S.S.G. § 2D1.1(b)(1). (ECF No. 181 at 3, 5-6). Defendant's reply again asserts that Booten failed to file any objections to his PSR and specifically claims that his criminal history category was incorrect, resulting in a "much harsher sentence." (*Id.* at 6-7).

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a movant must prove by a preponderance of the evidence that "[his] sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law. . . ." 28 U.S.C. § 2255 (2012); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Sutton v. United States of America*, No. 2:02-cr-65, 2:05-cv-91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006) ("A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the [movant] to establish his grounds by a preponderance of the evidence."). If the § 2255 motion, along with the records of the case, "conclusively show that [the movant] is entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970).

III.    DISCUSSION

A.    *Validity of guilty plea and effectiveness of counsel in plea process.*

Defendant first claims that Booten provided ineffective assistance during the guilty plea phase of his case.  The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  *Id*. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  *Id*. at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690.  This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."  *Id*. at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  *Id.* at 697.

In *Hill v. Lockhart*, the Supreme Court held that the two-part *Strickland* standard applies to challenges to guilty pleas based upon ineffective assistance of counsel.  474 U.S. 52, 58 (1985).  However, in assessing the prejudice prong, courts must consider "whether there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.  Furthermore, "[w]hen evaluating objective reasonableness under the prejudice prong of *Strickland*, the challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Christian v. Ballard*, 792 F.3d 427, 452-53 (4th Cir. 2015) (citing *United States v. Fugit,* 703 F.3d 248, 260 (4th Cir. 2012)).  Thus, Defendant cannot satisfy *Strickland* "merely by telling the court now that he would have gone to trial then if he had gotten different advice" from Booten.  *Id.*   Instead, Defendant must "'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010)); *see also Hill v. United States*, No. 2:15-cr-00026, 2019 WL 3425049, at *15 (S.D.W. Va. May 21, 2019), *report and recommendation adopted*, 2019 WL 2745852 (S.D.W. Va. July 1, 2019).

Defendant's claims largely arise out of the voluntariness of his guilty plea concerning the § 924(c) firearm offense in Count Five.  Defendant claims that Booten failed to communicate with him sufficiently and effectively about the essential elements of that offense prior to his guilty plea and that there was no factual basis for his guilty plea

to that offense.  However, Defendant's present assertions are wholly belied by the acknowledgements and admissions he made during his plea hearing.

As noted by the government, the Fourth Circuit held that a defendant's statements made under oath during a Rule 11 plea colloquy carry such a strong presumption of verity, that "they present a formidable barrier in any subsequent collateral proceedings." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citing *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004)).  Thus, absent extraordinary circumstances, allegations in a § 2255 motion that directly contradict a defendant's sworn statements made during a properly conducted Rule 11 colloquy are considered "palpably incredible" and "patently frivolous or false." *Id.* (ECF No. 177 at 12-13).

At his plea hearing, Defendant gave sworn responses to the Court and acknowledged that he understood the charges to which he was pleading, the penalties for each charge, and the consequences of his plea.  He further represented that he was fully satisfied with the assistance of his counsel, that pleading guilty was his own decision, and that no one had forced or coerced him to do so.  Moreover, notwithstanding Defendant's contention that Booten failed to sufficiently explain the essential elements of a § 924(c) offense before he plead guilty, it is clear from the plea hearing transcript that, before accepting his guilty plea, the Court specifically addressed the statutory elements and Defendant's acknowledgement of the factual basis for the offense.

Defendant's briefs rely extensively on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which analyzed a former version of the § 924(c) statute, which only addressed using or carrying a firearm during a drug trafficking crime and essentially found that "active employment" of the firearm was necessary to meet those

statutory elements.  Defendant emphasizes that he did not actively employ the firearm during any of the controlled buys involved in this case.

However, after *Bailey*, Congress amended § 924(c)(1)(A) to broaden the reach of the statute to include the element of possession of a firearm in furtherance of a drug trafficking crime, which does not require active employment of the firearm, and can be satisfied by possessing a firearm for protection of drugs and proceeds from drug sales. Essentially, the evidence, taken in the light most favorable to the government, must tend to show that the firearm "furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002).

The Fourth Circuit has recognized that "there are many factors that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking," including "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* at 705.  However, these factors are not exclusive, and all need not be met.  *Id.*  The appellate court specifically noted that "a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted." *Id.*; *United States v. Jeffers*, 570 F.3d 557, 565 (4th Cir. 2009) (§ 924(c) conviction appropriate where it is based, in part, on Defendant's admission that he kept firearms to guard against would-be robbers of drugs and drug proceeds).  Based upon these cases, it is clear that "active employment" is not required and the fact that Defendant did not actively employ or carry a firearm during the subject drug transactions is of no moment.

14

Booten's affidavit asserts that he and Defendant had numerous discussions about his potential sentencing exposure and the benefits of pleading guilty to both Counts Three and Five. (ECF No. 167 at 3-4).[2] Booten states that he believed that, if he went to trial, Defendant would be convicted of Count Five based upon the gun being considered "in furtherance of a drug trafficking crime," due to its proximate location to the heroin and currency in the adjoining closet. (*Id.* at 4). Thus, Booten asserts that Defendant's plea was knowing and voluntary and in his best interest. (*Id.*)

Moreover, the Court advised Defendant about the possession in furtherance element at the plea hearing and Defendant acknowledged that he possessed the firearm in question to protect the drugs and money he had in his residence. Thus, Defendant was properly advised of the essential elements of the § 924(c) offense and acknowledged conduct that satisfied those elements. Defendant must be held to these admissions. Accordingly, it cannot be said that the possession of the firearm was coincidental or entirely unrelated to his drug crimes.

Defendant's case is similar to that of *Lawson v. United States*, Nos. 17-cv-122; 13-cr-702, 2018 WL 1795339 (D. Md. Apr. 16, 2018). In *Lawson*, the defendant pled guilty to various charges, including a § 924(c) offense, but subsequently asserted that his firearm was not used in furtherance of drug trafficking. The Maryland court's opinion noted that *Bailey* was abrogated by Congress to no longer require proof of "active employment" of the firearm, but only "possession in furtherance of" a drug trafficking crime, which was supported by the facts and representations made by Lawson at his guilty plea hearing. *Id.* at 2, n. 4. Defendant, likewise, admitted conduct satisfying this element.

---

[2] There is no indication that the government was in any way willing to negotiate a plea that did not include Count Five.

15

Therefore, even if Booten's performance in the plea process somehow fell below an objective standard of reasonableness, Defendant suffered no prejudice because he was fully informed of the elements of the offense by the Court and admitted conduct that satisfied those elements.  He further represented to the Court that his guilty plea was his own idea and that he was not coerced by anyone to plead guilty.  Moreover, he has not presented evidence to reasonably demonstrate that it is more likely than not that he would not have pled guilty to the § 924(c) offense had Booten more thoroughly advised him of the elements and consequences of his plea, because the Court properly did so, and he still pled guilty.  Considering the available evidence against him, rejecting the guilty plea was not rational under the circumstances and Defendant's current blanket assertions that he would have done so and gone to trial are hollow in light of the admissions and acknowledgements he made at the plea hearing.  Thus, the District Court correctly found that Defendant's guilty plea was knowing and voluntary and Defendant has not adequately demonstrated a Sixth Amendment violation based upon ineffective assistance of counsel during the plea process.

> B.     *Failure to file a motion to suppress.*

Defendant further claims that Booten provided ineffective assistance of counsel because he did not move to suppress the evidence seized from Defendant's residence in Barboursville, which gave rise to the § 924(c) offense.  To successfully establish ineffective assistance of counsel based upon a failure to file a motion to suppress evidence, Defendant must show actual prejudice by demonstrating that his "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 375

(1986); *see also Hill v. United States*, No. CIV. A. DKC 2001-3893, 2007 WL 3094902, at
*4 (D. Md. Sept. 28, 2007).

Booten's affidavit states that he did not file a motion to suppress because he had
no good faith grounds on which to do so.  (ECF No. 167 at 2).  Defendant, on the other
hand, contends that the warrant affidavit omitted the fact that other persons were present
in the St. Albans house where the drug sales occurred, and it did not address whether any
drugs and money were stored in that house.  He also appears to contend that these facts
call into question the credibility of the confidential informant involved in the controlled
buys.  He further asserts that there was no reasonable suspicion or probable cause to
search the Barboursville residence, where no drug sales were alleged to have occurred.
(ECF No. 146 at 18-19).

Additionally, Defendant asserts that Booten failed to communicate with him and
would not listen to his reasons for filing a suppression motion.  (ECF No. 172 at 24).  He
further speculates that Booten did not even review the validity of the warrant documents
because he was "in the process of going to rehab without informing the court or the
parties," which he contends constitutes "deficient performance under any professional
norm."  (ECF No. 181 at 5).  He further contends that Booten's representation at the plea
hearing that there was no meritorious defense to the charges was marred by his failure to
pursue the suppression motion.  (*Id.*)  His reply brief contends that "the record is unclear
regarding what facts counsel knew before Byrd plead guilty, and whether his decision not
to file a motion to suppress was an objectively reasonable choice based on strategy."  (ECF
No. 181 at 5).

Defendant's claim is dependent upon a finding that the search warrant was issued
without probable cause or otherwise invalid, which is simply not the case.  *See Illinois v.*

*Gates*, 462 U.S. 213, 239 (1983).  First, the omission of the fact that there were other people present at the St. Albans house where the drug sales occurred appears to be immaterial, as there was video and audio evidence that undoubtedly implicated Defendant as the person conducting those drug sales.  Moreover, the warrant affidavit clearly demonstrates that law enforcement surveillance established that Defendant was living in the residence in Barboursville and had traveled to and from that residence to complete the drug transactions in St. Albans.  Specifically, the warrant affidavit states in pertinent part:

> After the controlled purchase detective observed the target get into a black Cadillac Escalade bearing WV registration O1E821 that the target had used to transport and deliver narcotics on prior purchases.  The target then took Route 60 into Cabell County.  Detectives then followed Mr. Byrd and the Escalade to Mr. Byrd's residence located at Hazel Jay Estates #14 Barboursville WV (Cabell County).  Mr. Byrd exited the Escalade and entered the residence numbered "14."  During surveillance in prior days Mr. Byrd has been seen staying at this residence and carrying groceries inside after visiting Walmart.  It is believed this is his primary residence.  The CI believes this residence is where Mr. Byrd is keeping the large amount of tar heroin he distributes and the US currency made by drug sells.

(ECF No. 146 at 26).

These facts were in no way misleading, and, under the totality of the circumstances, this information was sufficient to find probable cause for the search warrant for the Barboursville residence.  Moreover, the warrant otherwise appears to be valid and there is no basis upon which to challenge the reasonableness of the search.  In fact, at sentencing, the Court opined that "there is certainly no basis to contest the constitutionality of that search . . . ." (ECF No. 88 at 12).  Thus, it is extremely unlikely that Defendant would have succeeded with a motion to suppress had he filed one.  Therefore, notwithstanding Defendant's assertion that Booten's failure to file a suppression motion fell below an objective standard of reasonableness, he cannot

demonstrate the requisite prejudice to establish a violation of his constitutional rights on this basis and, thus, his claim lacks merit.

C.     *Failure to move for competency hearing before guilty plea.*

Defendant further contends that Booten provided ineffective assistance of counsel because he did not file a motion for a competency evaluation before Defendant pled guilty. (ECF No. 146 at 20; ECF No. 172 at 24-25, 27-28; ECF No. 181 at 4-5). Booten's affidavit asserts that he did not file such a motion because he did not believe Defendant was incompetent and he "observed nothing that would serve as a basis for requesting a mental exam prior to entry of defendant's plea." (ECF No. 167 at 2, 5). Booten further states that he only filed the motion for a mental health evaluation before sentencing at the behest of Defendant and his mother and their threats to file a complaint against him with the State Bar. (*Id.*)

"[T]he conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966). To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). The standards for competency to stand trial and to enter a guilty plea are the same, though a court accepting a guilty plea must also undertake sufficient inquiry to ensure that a defendant is knowingly and voluntarily waiving his trial and other constitutional rights. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Roach v. Martin*, 757 F.2d 1463, 1480 (4th Cir. 1985) (due process requires a defendant be legally competent to plead guilty); *Shaw v. Martin*, 733 F.2d 304, 314 (4th Cir. 1984) (the standard of competence to plead guilty parallels the standard of competency to stand

trial).  The Fourth Circuit has found, however, that "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000). A defendant asserting that he is legally incompetent must prove it by a preponderance of the evidence. *United States v. General*, 278 F.3d 389, 396 (4th Cir. 2002).

A competency hearing may be warranted "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (2012); *see also United States v. Hemphill*, 622 F. App'x 271, 272 (4th Cir. 2015).  To determine whether reasonable cause for a competency hearing exists, the court should consider such factors as "(1) any history of irrational behavior; (2) the defendant's demeanor at and prior to [court proceedings]; and (3) prior medical opinions on competency."  *General*, 278 F.3d at 397.  "Where, however, the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition, counsel has an affirmative obligation to make further inquiry." *Wood v. Zahradnick*, 430 F. Supp. 107, 111 (E.D. Va. 1977) (internal citation omitted), *aff'd*, 578 F.2d 980 (4th Cir. 1978).  "And where such reasonable doubt arises, a lawyer 'is not entitled to rely on his own belief about a defendant's mental condition,' but instead must make a reasonable investigation when the facts known and available raise a question as to a defendant's competence." *Mann v. United States*, 66 F. Supp.3d 728, 736 (E.D. Va. 2014) (quoting *Becton v. Barnett*, 920 F.2d 1190, 1192 (4th Cir. 1990)).  Nonetheless, Defendant must ultimately demonstrate that, if his counsel had

moved for a competency hearing, evidence would have been uncovered to reveal that he was incompetent. *McDaniels v. United States*, No. CR 7:06-00036-HFF-1, 2011 WL 13308712, at *3 (D.S.C. Jan. 7, 2011).

In this case, the record demonstrates nothing that would have caused a reasonable attorney in Booten's position to doubt Defendant's mental capacity at the time of his plea. Defendant has failed to allege facts creating any reasonable doubt as to his competence or demonstrating that Booten's failure to request a mental evaluation "fell below an objective standard of reasonableness" for competent counsel. *See, e.g., Page v. United States*, No. 4:13CR63, 2015 WL 4571316, at *5 (E.D. Va. July 28, 2015). Defendant has offered no evidence to demonstrate that, at the time of his criminal proceedings, and in particular his guilty plea, he was not competent to enter his plea. Additionally, the Court inquired about his ability to understand the proceedings at that time and specifically found that Defendant was competent and that his guilty plea was knowing and voluntary. Defendant offers nothing more than speculation in attempting to call these findings into doubt. *See also Mann*, 66 F.Supp.3d at 378–79 (refusing to find ineffective assistance of counsel for failure to request competency hearing where the petitioner displayed competency throughout the proceedings but previously suffered from drug abuse, polio, and meningitis).

Although Defendant presents evidence that he had previously been diagnosed with learning disabilities, anxiety and depression, and was a substance abuser, such disorders are not per se indicia of incompetence. *See United States v. Robinson*, No. 96-4771, 1997 WL 294483, at *1 (4th Cir. June 3, 1997) ("An opinion that a defendant is a substance abuser or a paranoid schizophrenic does not constitute an opinion on competency."); *Hall v. United States*, 410 F.2d 653, 658 (4th Cir. 1969) ("[T]he presence

21

of some degree of mental illness is not to be equated with incompetence to be sentenced."). Instead, it is evident from the transcript of the plea hearing that Defendant possessed the competence to plead guilty. Thus, even if Booten was somehow deficient in not making a motion for a competency hearing before Defendant pled guilty, Defendant has not reasonably alleged that he was prejudiced by this decision. Therefore, he has not sufficiently established a Sixth Amendment violation under *Strickland*.

> D.    *Failure to object to PSR and performance at sentencing.*

Defendant also asserts that Booten provided ineffective assistance during his sentencing proceedings. In particular, he claims that Booten erred in failing to challenge the § 924(c) charge and, instead, argue only for a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon (Defendant appears to agree that this guideline enhancement would have been warranted, although it was not imposed). However, as addressed in detail above, there was sufficient factual support for the § 924(c) offense and there does not appear to be any valid basis to challenge that conviction.

Defendant further asserts that Booten should have challenged his criminal history category calculation. The Court determined that Defendant had four criminal history points based on one point for an April 28, 2010 domestic battery conviction in Wood County, for which he received a 30-day suspended sentence, with a 60-day term of probation, and three points for a January 3, 2014 conviction in the Southern District of Ohio for possession with intent to distribute Oxycodone, for which was sentenced to 24 months of imprisonment, followed by a three-year term of supervised release. This calculation was technically correct under the guidelines. Thus, an objection thereto would not have been successful. However, Booten requested a variance from criminal history category III to a criminal history category II, asserting that Defendant's criminal history

was overrepresented by the nearly ten-year-old battery conviction. Nonetheless, no variance was granted by the Court.

It is apparent from the record that Booten reasonably, but unsuccessfully, argued for a lower criminal history calculation and an overall variance from Defendant's guideline sentence determination. Defendant has not suggested what else Booten could have or should have done to change the Court's decision. Accordingly, Defendant has not established that Booten's conduct fell below an objective standard of reasonableness and has not demonstrated a valid Sixth Amendment violation on this basis.

   E.   *Appellate counsel's performance on appeal.*

Defendant retained new counsel, Patrick A. Mullin, to represent him on appeal. In his appeal, Defendant raised three claims for relief: (1) that Booten was ineffective in advising him to plead guilty to the firearm count; (2) that the District Court unreasonably denied his request for a downward variance; and (3) that the District Court abused its discretion in denying his motion for a presentence mental evaluation. Although his initial brief does not contain much detail about Mullin's conduct, Defendant appears to claim that Mullin provided ineffective assistance of counsel because he raised the challenge to the § 924(c) offense as a claim of ineffective assistance of counsel, which the appellate court declined to address, rather than as a substantive claim. He further asserts that the facts supporting the invalidity of his guilty plea and the alleged ineffectiveness of attorney Booten with respect to this issue were clearly established on the record. (ECF No. 146 at 22). Thus, he appears to be asserting that Mullin simply failed to properly, and effectively, argue those issues. Defendant's reply brief fails to further elaborate on his ineffective assistance claim against Mullin.

23

Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. *Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the movant still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different; namely, that he would have prevailed on appeal. *See Robbins*, 528 U.S. at 285-86; *Shareef v. United States*, No. 318CR00157RJCDCK3, 2022 WL 1416424, at *3 (W.D.N.C. May 4, 2022).

Here, the undersigned has already found that Defendant's other claims for relief have no substantive merit. Therefore, he cannot establish the requisite prejudice from Mullin's failure to raise these substantive claims because he cannot demonstrate that the result of his appeal would have been different had Mullin asserted them. Nor has Defendant established how Mullin could have differently handled the issues surrounding Booten's performance. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not sufficiently established a violation of his Sixth Amendment rights based upon Mullin's actions in his direct appeal proceedings.

*F.      There is no valid need for an evidentiary hearing.*

Defendant takes issue with various statements made in Booten's affidavit and he claims that an evidentiary hearing is necessary to complete the record and resolve those disputes.   However, many of the disputed issues addressed in Booten's affidavit and Defendant's filings are not material to the resolution of his claims for relief under § 2255. Thus, the undersigned finds that the material facts necessary to adjudicate Defendant's claims for relief under § 2255 are already within the record and there is no need for an evidentiary hearing herein.

## IV.     RECOMMENDATION

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 146) and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written  objections,  identifying  the  portions  of  the  Proposed  Findings  and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit a copy to counsel of record.

June 23, 2022

Dwane L. Tinsley
United States Magistrate Judge